## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Residential Funding Company, LLC<br><br>Plaintiff,<br><br>v.<br><br>First Mortgage Corporation,<br><br>Defendant. | Case No. 13-cv-3490 (SRN/HB) |

Matthew Scheck, Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017; Donald Heeman, Jessica Nelson, and Randy Winter, Felhaber Larson, 220 S. 6th St., Suite 2200, Minneapolis, MN 55402, for Plaintiff.

Thomas Sullivan, Thomas M. Sullivan, Jr., 191 Sylvestor Place, Highlands Ranch, CO 80129; Michael J. Minenko, Minenko & Hoff, P.A., 5200 Willson Rd., Suite 150 Edina, MN 55424, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

Before the Court are the parties' cross motions for summary judgment. On November 16, 2018, the Court heard oral argument on the parties' motions. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment [Doc. No. 110] is granted in part, denied without prejudice in part, and denied in part, and Defendant's Motion for Partial Summary Judgment [Doc. No. 85] is denied as moot in part and denied in part.

## II. BACKGROUND

In December 2013, Plaintiff Residential Funding Company, LLC ("RFC") commenced this lawsuit against First Mortgage Corporation ("First Mortgage), as well as numerous other individual lawsuits against other loan originators, asserting claims of breach of contract and indemnification. In January 2015, this Court consolidated 68 of RFC's then-pending suits for pretrial purposes (hereafter, the "Consolidated Action"). (*See* Consol. Action ("CA"), Jan. 29, 2015 Am. Admin. Order at 3 [Doc. No. 100].)[1] Defendant First Mortgage participated in the Consolidated Action until June 2018, when it resumed its prior status as a non-consolidated case.[2]

In recent months in the Consolidated Action, the Court issued rulings on the parties' motions for summary judgment (CA, "Consolidated Summary Judgment Order" [Doc. No. 4307]), motions to exclude experts (CA, "*Daubert* Order" [Doc. No. 4471]; and motions in limine (CA, "Motions in Limine Order" [Doc. No. 4551]). In addition, in a related, non-consolidated case, *Residential Funding Co., LLC v. Universal American Mortgage Co., LLC*,

---

[1] The Court's internal citations to documents filed in *ResCap Liquidating Trust v. Home Loan Center, Inc.*, 13-cv-3451 (SRN/HB), the Consolidated Action, are preceded by "CA," to distinguish them from documents filed in the instant action, 13-cv-3490 (SRN/HB). Citations to documents filed in *Residential Funding Co., LLC v. Universal American Mortgage Co., LLC*, 13-cv-3519 (PAM/HB), are prefaced with "UAM."

[2] At various times during discovery in the Consolidated Action, First Mortgage sought to be removed from the proceedings and proceed instead on an individual basis. At summary judgment in the Consolidated Action, when the Consolidated Defendants refused to include certain arguments that First Mortgage wished to assert in the joint defense memorandum, First Mortgage renewed its request to be removed from the consolidated proceedings. In light of the apparently irreconcilable differences between counsel for First Mortgage and all other defense counsel, the Court granted First Mortgage's request. (June 5, 2018 Order at 3 [Doc. No. 81].)

13-cv-3519 (PAM/HB), Judge Magnuson issued a ruling on the parties' cross motions for summary judgment. (UAM Summ. J. Order [Doc. No. 931].)

Even more recently, the undersigned judge presided over the first trial against one of the remaining defendants in the Consolidated Action, Home Loan Center (hereafter, "the HLC trial"). Plaintiff proceeded to trial on its claim of contractual indemnity. In the course of the seventeen-day HLC trial, the Court ruled on several motions for judgment as a matter of law which are addressed in this Order, as applicable. On November 8, 2018, the jury found for the Plaintiff and awarded damages of $28,700,000 against Home Loan Center.[3] (CA, HLC Trial, Redacted Special Verdict Form [Doc. No. 4705].)

The Court assumes familiarity with the detailed facts and legal issues addressed in its prior rulings and findings. Because most of the facts and issues contained in these other rulings are identical to those raised by the parties here, they are incorporated by reference.

In brief, RFC alleges that First Mortgage breached its agreements with RFC and must indemnify it for allegedly defective mortgage loans that First Mortgage sold to RFC, and which RFC then aggregated and sold as residential mortgage-backed securities to various securitized trusts (the "RMBS Trusts"). (*See* First Am. Compl. ¶¶ 78–89 [Doc. No. 24].) In addition, certain securitizations that RFC sponsored or serviced, or securitizations into which it sold loans, carried financial guaranty insurance furnished by monoline insurers (the "Monolines"). (*See id.* ¶¶ 39, 66, 72.) Under the insurance policies, the Monolines generally

---

[3] Currently pending before the Court in the Consolidated Action is Plaintiff's Motion for Prejudgment Interest [Doc. No. 4739].

guaranteed that investors would receive timely payments of principal and interest on their notes or certificates.

Following the 2008 housing market collapse, the RMBS Trusts experienced significant losses. Similarly, due to the high rate of default in the RFC-sponsored and serviced securitizations, the Monolines also made payments to their insureds under their policies and were likely to incur future payments. Several RMBS Trusts and Monolines sued RFC for the breach of its representations and warranties, eventually causing RFC to file for bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York. (*Id.* ¶ 71.) The RMBS Trusts and Monolines then filed RMBS-related proofs of claim with the Bankruptcy Court in order to obtain damages. (*Id.* ¶ 72.)

Bankruptcy Judge Martin Glenn, who oversaw RFC's bankruptcy proceedings, appointed another sitting federal bankruptcy judge, Judge James Peck, as mediator, and additionally authorized Lewis Kruger as the Chief Restructuring Officer to negotiate a settlement of the claims against Plaintiff. (CA, Scheck Decl., Ex. 30 (Mediator Order) [Doc. No. 3303]); *id.*, Ex. 31 (Kruger Direct Testimony ¶¶ 11–12) [Doc. No. 3258-9].) In May 2013, after lengthy discovery, RFC entered into settlement agreements with the RMBS Trustees and Monolines MBIA, FGIC, Ambac, and Syncora, which were incorporated into the parties' proposed Chapter 11 Bankruptcy Plan ("the Plan"). The Plan reflected that the parties had resolved the RMBS Trustees' claims against RFC for $7.091 billion (the "RMBS Settlement"), and the Monolines' claims against RFC as follows: MBIA ($1.45 billion), FGIC ($415 million), Ambac ($22.8 million), and Syncora ($7 million) (collectively, the

"Monoline Settlements," and collectively with the RMBS Settlement, the "Settlements").

Judge Glenn approved the Plan and found that the Settlements were reasonable. (CA, Scheck Decl. [Doc. No. 3258], Ex. 28 (Bankr. Findings of Fact ¶¶ 51, 178, 201.)

The Bankruptcy Court's Confirmation Order and the Plan authorized the creation of a "Liquidating Trust," i.e., the Rescap Liquidating Trust, into which RFC was to transfer and assign its assets, and preserved the Liquidating Trust's (and Estates') causes of action. (*Id.*, Ex. 32 (Bankr. Confirm. Order ¶ 48); *id.*, App. 1 (Bankr. Plan at 74–75).)

Exercising that authority, Plaintiff filed the instant suit, originally alleging claims for breach of contract and contractual indemnification. The Court assumes that Plaintiff will pursue only its contractual indemnification claim at trial.

Specifically, with respect to indemnification, RFC alleges that under the parties' agreements and the Client Guide, First Mortgage expressly agreed to indemnify RFC for all liabilities, losses, and damages, including attorneys' fees and costs incurred by RFC attributable to First Mortgage's breaching loans. (First Am. Compl. ¶ 88.) It contends that it has incurred such liabilities, losses, and damages arising from the alleged material defects in First Mortgage's loans. (*Id.* ¶ 87.) Specifically, RFC points to over $10 billion in allowed claims approved by the Bankruptcy Court, as well attorneys' fees, litigation-related expenses, and other costs associated with defending numerous lawsuits and proofs of claim against RFC stemming, in part, from the Defendant's allegedly defective loans. (*Id.*)

First Mortgage denies the allegations in Plaintiff's Second Amended Complaint and asserts several defenses, including, among others, defenses concerning the statute of

limitations, waiver and estoppel, and that RFC's losses were caused by its own actions or omissions. (*See generally* Ans. to First Am. Compl. [Doc. No. 49].)

### A. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material'" only if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing a lack of genuine issue of fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a motion for summary judgment, however, the nonmoving party may not "'rest on mere allegations or denials,' but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Summary Judgment Motions

Plaintiff seeks summary judgment on the following issues: (1) the Client Guide applies to all of First Mortgage's At-Issue Loans; (2) the Client Guide confers upon Plaintiff the sole discretion to (a) determine breaches of Defendant's R&Ws, and (b) settle

claims; (3) the Settlements were reasonable and made in good faith; (4) the Client Guide should be broadly interpreted to permit recovery for (a) all liabilities, not just losses, or, alternatively, (b) all losses on breaching loans; (5) Plaintiff's Allocated Breaching Loss Approach provides a reasonable, non-speculative basis to allocate the Settlements; (6) to establish liability, Plaintiff need only establish that First Mortgage's breaches were a "but for" cause of Plaintiff's origination-related losses and liabilities; (7) Defendant's affirmative defenses that contradict the Client Guide fail; (8) Defendant's liability for indemnity is not extinguished by (a) RFC's bankruptcy or (b) RFC's alleged wrongdoing; and (9) Plaintiff may use statistical sampling to prove their claims and need not re-underwrite each at-issue loan. (*See generally* Pl's. Mem. Supp. Mot. for Summ. J. ("Pl's. Mem.") [Doc. No. 112].)

In response, First Mortgage does not contest Plaintiff's motion with respect to the applicability of the Client Guide and RFC's discretion to determine instances of breach and to settle disputes. (Def.'s Mem. in Opp'n ("Def.'s Opp'n") at 1–2 [Doc. No. 131].) Nor does it contest the dismissal of its defense of accord and satisfaction. (*Id.* at 23.) Accordingly, Plaintiff's motion is granted on these bases.

In all other respects, First Mortgage opposes Plaintiff's motion. It also argues that during discovery, RFC subjected it to a "data dump," making many of its defenses difficult to develop. (*Id.* at 28–32.) First Mortgage acknowledges, however, that "[w]e have knowingly and intentionally not raised this issue previously." (*Id.* at 32.)

In its affirmative motion for summary judgment, First Mortgage seeks judgment in

its favor on several issues, which the Court categorizes as follows[5]: (1) the dismissal of 93 loans on statute of limitations grounds; (2) the dismissal of 35 loans because there was no material breach; (3) RFC was itself the "sole cause" of its losses and liabilities; (4) the dismissal of 35 additional loans on several causation bases[6]; (5) Plaintiff must prove its damages on a loan-by-loan basis, using the best evidence; (6) Plaintiff's damages model is speculative; and (7) Plaintiff is only entitled to indemnity for its losses, not liabilities. (*See generally* Def.'s Mem. Supp. Mot. for Summ. J. ("Def.'s Mem.") [Doc. No. 87]; *see also* Def.'s Ex. L (Oral Argument Slides at DF-MPSJ-EX-L-4) [Doc. No. 142].)

In response, Plaintiff argues that this Court has rejected the argument that Plaintiff's claims are time-barred, the "material breach" arguments are inapplicable to Plaintiff's claims, Defendant's causation arguments misapply the law, Plaintiff may be indemnified for its losses and liabilities, and Plaintiff may use statistical sampling to determine damages. (Pl.'s Mem. in Opp'n ("Pl.'s Opp'n") at 4–20 [Doc. No. 130].)

---

[5] While Defendant has enumerated and articulated its grounds for relief slightly differently, the Court attempts to address these arguments in its discussion of the broader categorizations listed above. The Court has considered all of First Mortgage's grounds for summary judgment.

[6] Specifically, First Mortgage seeks the dismissal of claims related to seven loans in which loan servicers agreed to short sales, six loans in which the loan servicers agreed to loan modifications, 13 loans in which the borrowers provided loan servicers an explanation and superseding causes of default, seven loans in which the servicers failed to mitigate damages, and two loans in which servicers under-bid the amount the borrower owed. (Def.'s Mem. at 17–31.)

### 1. Reasonableness and Good Faith of the Settlements (Plaintiff's Motion)

As noted, Plaintiff moves for a ruling from this Court that the Settlements were reasonable and made in good faith. (Pl.'s Mem. at 9-10.) First Mortgage opposes Plaintiff's motion, arguing that the Court has previously found reasonableness and good faith to be fact questions for the jury. (Def.'s Opp'n at 2.)

First Mortgage is correct that in the August 15, 2018 Consolidated Summary Judgment Order, the Court denied Plaintiff's motion on theses issues. (CA, Consol. Summ. J. Order at 80.) The Court cited the need for a full record on such a fact-intensive inquiry. (*Id.* at 80–81.)

Subsequently, in the HLC trial, prior to the submission of the case to the jury, Plaintiff moved for judgment as a matter of law on the good faith and reasonableness of the Settlements. (*See* CA, HLC Trial Tr. at 2972–90 [Doc. No. 4724].) Under Federal Rule of Civil Procedure 50(a), when "a party has been fully heard on an issue," and the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may "resolve the issue against the party," and "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). After receiving written and oral argument from the parties, the Court found no triable issue as to reasonableness and good faith and granted Plaintiff's motion under Rule 50(a). (CA, HLC Trial Tr. at 2984.)

As the Court noted, under Minnesota law, the analysis of good faith and

reasonableness requires evidence concerning what the parties knew or could have known at the time of the settlement. (*Id.* at 2974); *see Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982). Subsequent knowledge of new facts and law is irrelevant to the question of whether a settlement was reasonable at the time it was made. (CA, HLC Trial Tr. at 2974.) Instead, the fact finder must consider whether a reasonable, prudent person would have entered into the settlement based on an analysis of the defendant's potential exposure at trial, the factual and legal strengths and weaknesses of the claims and defenses, the risks of proceeding to trial, and the burden of litigation. (*Id.*); *Miller*, 316 N.W.2d at 735; *see also Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp. 1029, 1084 (D. Minn. 1981). The focus is on whether the settlement falls within a reasonable range of potential recoveries, not whether it is an ideal settlement. (CA, HLC Trial Tr. at 2974); s*ee, e.g., Nelson v. Am. Home Assur. Co.*, 824 F. Supp. 2d 909, 917 (D. Minn. 2011), *aff'd*, 702 F.3d 1038 (8th Cir. 2012). Particularly relevant to this analysis is the consideration of the law that governed the claims and defenses at the time of the settlement. (CA, HLC Trial Tr. at 2974.)

In ruling that the Settlements were reasonable and made in good faith, the Court considered the record evidence. Regarding reasonableness, the Court first found that the Settlements were entered into after a lengthy mediation, conducted by a federal bankruptcy judge. (*Id.* at 2976; *see* CA, Pl.'s Tr. Exs. 15 (Order Appointing Mediator) & 6 (Hawthorne Rpt. ¶¶ 24, 131–32, 170–86).) Second, the Court noted that an independent Chief Restructuring Officer, Lewis Krueger, participated in the mediation and testified at trial that he sought to achieve consensus and that his decision to enter into the Settlements was

informed by his discussions with his advisors and all of RFC's principal creditors. (CA, HLC Trial Tr. at 2976; *see* CA, Pl.'s Tr. Ex. 19 (Krueger Dep. at 32, 67, 88, 168).) Third, RFC's bankruptcy expert, Frank Sillman, testified to the reasonableness of the Settlements. (CA, HLC Trial Tr. at 2976–77); *see* CA, Pl.'s Tr. Exs. 29 (Sillman Reply Decl. at 12) & 19 (Krueger Dep. at 168).) Fourth, the RMBS Trustees' expert, Allen Pfeiffer, testified that the Settlements were reasonable. (CA, HLC Trial Tr. at 2977.) Fifth, all of the constituencies to RFC's bankruptcy supported the Settlements, including the Creditors' Committee—a group that had opposed an earlier settlement. (*Id.* at 2976–77; *see* CA, Pl.'s Tr. Exs. 17 (Order confirming Second Am. Joint Chapter 11 Plan), 19 (Krueger Dep. at 168) & 6 (Hawthorne Rpt. ¶ 144).) Sixth, the RMBS Trustees supported the Settlements. (CA, HLC Trial Tr. at 2977; CA, Pl.'s Trial Ex. 16 (Krueger Decl. ¶ 3).) Seventh, Plaintiff's expert on the RMBS litigation, Donald Hawthorne, an experienced RMBS litigator, opined that the Settlements were reasonable and made in good faith.[7] (CA, HLC Trial Tr. at 2977; CA, Pl.'s Trial Ex. 6 (Hawthorne Rpt.).) Mr. Hawthorne testified about the complexity of the law at that time concerning certain defenses, the legal burden of causation, and the unique causes of action available to monoline insurers at the time of the

---

[7] The only witness that HLC offered to challenge Hawthorne's testimony, Dr. Phillip Burnaman, conceded that he was not an expert on reasonableness and could not fault Hawthorne's assessment of litigation risk, as Burnaman did not have training in the law. (*See* CA, HLC Trial Tr. at 2980.) As such, the Court found his testimony was not probative of reasonableness. (*Id.*) First Mortgage offers no witness to rebut Mr. Hawthorne's opinion.

settlements by virtue of their contracts and certain applicable insurance law.[8] (CA, HLC Trial Tr. at 2974–75.) Eighth, U.S. Bankruptcy Court Judge Martin Glenn, who presided over the bankruptcy proceedings, approved the Settlements, finding them reasonable. (*Id.* at 2977.) These facts and findings were uncontroverted—no fact or expert witness testified to the contrary. These same facts are equally applicable here. First Mortgage has identified no evidence that raises a disputed question of material fact on reasonableness. First Mortgage offers no expert opinion to the contrary.

As to good faith, the Court found in the HLC trial that "[n]o fact witness, no expert at the time of the bankruptcy nor any expert in this case has ever testified that the settlements were entered into in bad faith. There is no indicia of bad faith in the record and the defense cites to none." (*Id.*) This is equally true here, as First Mortgage has failed to identify any facts giving rise to a disputed issue of fact concerning good faith.

In addition, after this Court ruled on summary judgment in the consolidated cases, Judge Paul Magnuson, who presided over a small group of non-consolidated RFC cases, ruled that the Settlements were made in good faith and were reasonable, as a matter of law. *Universal Am. Mortg. Co.*, No. 13-cv-3519 (PAM/HB) (D. Minn. Oct. 12, 2018 [UAM Doc. No. 931 at 12–13]. While Judge Magnuson acknowledged that reasonableness may in some instances be a question of fact, he found that the facts before him allowed a

---

[8] Moreover, shortly before the Settlements were entered into, the monoline insurer-plaintiff in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596 (S.D.N.Y. 2012), obtained a judgment for 100 percent of its losses, plus interest. Mr. Hawthorne testified that that case would have loomed large in the minds of the mediating parties. (*See* CA, HLC Trial Tr. at 2978.)

reasonable factfinder to draw only one conclusion—that the Settlements were reasonable and made in good faith. *Id.* at 13.

In opposition to Plaintiff's motion, First Mortgage argues here that the Court has already decided that the questions of reasonableness and good faith are disputed factual issues that must go to the jury. (Def.'s Opp'n at 2.) Granted, Defendant made this argument prior to the Court's ruling on judgment as a matter of law in the HLC trial. But First Mortgage reiterates this position in its Revised Proposed Order and Order on Summary Judgment, submitted to the Court via email on November 14, 2018—*after* the Court's ruling on reasonableness and good faith in the HLC trial. First Mortgage appears to argue that the Settlements were unreasonable because they were made based on incomplete facts. (*Id.* at 39.) For instance, it asserts that a statistical analysis performed by the financial advisory firm of Duff & Phelps failed to consider causation. (*Id.*)

The Court finds First Mortgage's argument unpersuasive. Duff & Phelps was not retained by RFC. Rather, it was hired by certain RMBS Trustees to identify and quantify their claims. Mr. Sillman was Plaintiff's bankruptcy expert. Further, Alan Pfeiffer, of Duff & Phelps, testified that his firm considered causation but did not find it to be particularly important because the underlying claims were "put-back" claims, which did not have the causality requirement that the RMBS defendants were seeking. (*See* CA, Pl.'s Trial Ex. 22 (Pfeiffer Dep. at 167–68).)

Beyond mere speculation and inapposite facts, First Mortgage does not identify any non-speculative, admissible evidence to rebut the overwhelming evidence that the

Settlements were reasonable and made in good faith. The Court therefore rejects Defendant's argument that the Settlements were based on incomplete facts. The evidence on which the Court based its prior ruling remains unchanged and uncontroverted. Accordingly, the Court grants summary judgment to Plaintiff on the issue of the reasonableness and good faith of the Settlements.

### 2. Recovery for All Liabilities or, Alternatively, All Losses on Breaching Loans (Cross Motions)

Plaintiff moves for a summary judgment ruling that the Client Guide provides broad remedies, including recovery for all liabilities and all losses on breaching loans. (Pl.'s Mem. at 10.) It asks the Court to reconsider its consolidated summary judgment ruling limiting Plaintiff's remedies to its actual out-of-pocket losses and liabilities it incurred, as reflected in the Allowed Claims. (*Id.* at 12.) Essentially, it seeks to recover all losses that resulted from Defendant's breaching loans. (*Id.* at 12–13.)

Conversely, First Mortgage seeks a summary judgment ruling that RFC may only seek indemnity for its actual, out-of-pocket losses, not all losses, nor for its incurred liabilities. (Def.'s Mem. at 33–34.) It argues that RFC is entitled to no more than the bankruptcy-settled out-of-pocket amounts for any individual loan. (Def.'s Opp'n at 24–25.) It seeks clarification that the Court's ruling in the Consolidated Summary Judgment Order ruling was consistent with its understanding. (*Id.* at 24.)

"Actual losses" refer to the amounts that RFC paid out of pocket in the settlements, "liabilities" refer to liabilities that were incurred in the Settlements and allowed by the Bankruptcy Court, and "all losses on breaching loans" refers to all losses that RFC

14

incurred on First Mortgage's breaching loans. For the reasons set forth in the Consolidated Summary Judgment Order, (*see* CA, Consol. Summ. J. Order at 81–90), the Court finds that, as a matter of law, First Mortgage must indemnify RFC's incurred liabilities, as reflected in the Allowed Claims, not merely its actual, out-of-pocket losses. Section A212 of the Client Guide, including earlier versions and post-December 2005 versions, provides for indemnity for such liabilities. (Horst Decl., Ex. 1 (Client Guide § A212) [Doc. No. 113-1].) Alternatively, § A202(II) of the Client Guide also provides for indemnity for liabilities. (*Id.*, § A212.) This means that RFC may seek indemnification for all claims that were allowed by the Bankruptcy Court. Accordingly, the Court grants Plaintiff's motion for summary judgment in part on this basis, and denies Defendant's motion.

The Court will not, however, reconsider its prior ruling—as Plaintiff requests—concerning recovery of all losses.[9] As the Court explained in the Consolidated Summary Judgment Order, this approach would result in a windfall to RFC. (CA, Consol. Summ. J. Order at 162–63.) RFC's damages ultimately sound in indemnity and are fixed by the Allowed Claims for the losses and liabilities that RFC incurred in the Settlements. Accordingly, to the extent that Plaintiff seeks summary judgment permitting it to obtain damages for all losses on breaching loans, its motion is denied in part on this basis.

### 3. Allocated Breaching Loss Damages Model (Cross Motions)

Plaintiff moves for summary judgment on the question of whether its Allocated

---

[9] Such damages would fall under Plaintiff's Breaching Loss Damages model, described in the following section, which the Summary Judgment Order precluded. (CA, Consol. Summ. J. Order at 149–57.)

Breaching Loss damages model provides a reasonable, non-speculative basis to allocate the Settlements. (Pl.'s Mem. at 14–15.) Defendant also moves for summary judgment on this basis, seeking a ruling that this damages model is speculative. (Def.'s Mem. at 31–41.)

In the Consolidated Action, Plaintiff presented three damages models offered through its expert, Dr. Karl Snow. In its first model for measuring and allocating damages, RFC offered a "Breaching Loss Approach" that attempted to quantify the economic harm to the RMBS Trusts caused by breaching loans sold to RFC by each individual defendant. (CA, Scheck Decl. [Doc. No. 3258], Ex. 38 (Corr. Snow Rpt. ¶¶ 69-78).) In its second model for measuring damages, RFC offered an "Allocated Breaching Loss Approach" that attempted to assess and allocate damages by measuring each defendant's share of the liabilities RFC incurred in the Settlements rather than the economic harm caused by breaching loans. (*Id.* ¶¶ 79-86.) In the third model for measuring damages, RFC offered an "Allocated Loss Approach" that again measured damages in relation to the liabilities RFC incurred in the Settlements, but this time assessed damages based on each Defendant's share of total losses on all at-issue loans, not just breaching loans. (*Id.* ¶ 3.)

Ultimately, the Court found that the Allocated Breaching Loss Approach was an appropriate method for measuring damages, and rejected the Breaching Loss Approach and the Allocated Loss Approach. (CA, Consol. Summ. J. Order at 173–76.) Again, the Allocated Breaching Loss Approach assesses damages by measuring each defendant's share of the liabilities RFC incurred in the Settlements, and does not provide a windfall to

16

RFC.

First Mortgage does not present any expert opinion or other evidence to challenge the validity of this damages model. However, First Mortgage apparently seeks to challenge Dr. Snow's opinion as speculative, via a *Daubert* motion. (Def.'s Mem. at 31) ("[T]here are a couple of troubling trial issues we seek to resolve now. Significantly, the Court left the door open for Dr. Snow to testify about a loss approach. Our position is that Dr. Snow's testimony is merely an estimate, and there is actually better probative and admissible evidence to provide a more reasonably certain calculation of damages.")

Defendant has presented no evidence that the Allocated Breaching Loss model fails to meet *Daubert* standards. Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, proposed expert testimony must satisfy three prerequisites to be admitted. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact." *Id.* "Second, the proposed witness must be qualified to assist the finder of fact." *Id.* "Third, the proposed evidence must be reliable

or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id.* (citation and internal quotation marks omitted).

These requirements reflect the Supreme Court's analysis in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Court emphasized the district court's "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 146 (1999) (extending *Daubert* to technical and other specialized expert testimony). The party calling an expert must demonstrate the reliability of the expert's opinion by a preponderance of the evidence. *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915 (8th Cir. 2017) (citing *Daubert*, 509 U.S. at 592 n.10).

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion. *Lauzon*, 270 F.3d at 686 (citation and internal quotation marks omitted); *Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Doubts regarding the usefulness of an expert's testimony should be resolved in favor of admissibility, *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011), and gaps in an expert witness's qualifications or knowledge generally go to the weight of his testimony and not its admissibility, *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (citing 29 Charles Alan Wright & Victor James Gold, *Federal Practice and*

*Procedure: Evidence* § 6265 (1997)).  Likewise, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Finch*, 630 F.3d at 1062 (citation and internal quotation marks omitted).

The court should focus on "principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, but may conclude "that there is simply too great an analytical gap between the data and the opinion proffered" for the opinion to be useful to the jury, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  The touchstone for admissibility of expert testimony is assistance to the trier of fact.  *See Larson v. Kempker*, 414 F.3d 936, 940–41 (8th Cir. 2005).  "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (internal citations and quotations omitted).

Plaintiff's Allocated Breaching Loss approach, offered by Dr. Snow, meets these standards.  Accordingly, the Court grants Plaintiff's motion in this regard, finding that the Allocated Breaching Loss approach provides a reasonable, non-speculative basis to allocate the Settlements.   Defendant's motion is denied.

### 4.   Loan-by-Loan Proof of Damages/Sampling (Cross Motions)

First Mortgage seeks summary judgment on the question of whether Plaintiff must prove its damages loan-by-loan, (*id.* at 36-37, 41), while Plaintiff moves for summary judgment permitting it to use statistical sampling to allocate damages.  (Pl.'s Mem. at 25–

26.) Plaintiff intends to offer the testimony of its expert Dr. Snow, who used the Allocated Breaching Loss Approach to consider the breach rate of First Mortgage's At-Issue Loans and the breach rate of a random sample of loans settled in bankruptcy.

In the Consolidated Summary Judgment Order, the Court approved this method of proof, finding that statistical sampling is a permissible method of proving damages (CA, Consol. Summ. J. Order at 57-69), and that the Allocated Breaching Loss Approach is not speculative, remote, or conjectural. (*Id.* at 174.)

While First Mortgage contends that loan-by-loan proof is required and must be based on evidence such as the amount the borrower owes as of the foreclosure date, (Def.'s Mem. at 36-37, 41), the Court disagrees. The Court has found that the Allocated Breaching Loss Approach properly "measures damages in relation to the liabilities RFC incurred in the Settlements rather than the economic harm caused by breaching mortgages." (CA, Consol. Summ. J. Order at 163.)

The Court also rejects Defendant's argument that loan-by-loan evidence is required as "best evidence" of Plaintiff's damages. (Def.'s Mem. at 32 n.33) (citing *Residential Funding Co., LLC v. Quicken Loans, Inc.*, 2017 WL 5571222 (Minn. Dist. Ct. Hennepin Cnty. Feb. 1, 2017)). As noted in the Consolidated Summary Judgment Order, statistical sampling is a valid method of proof. Moreover, First Mortgage's reliance on *Quicken* is misplaced, as it does not address sampling methods. *See Quicken*, 2017 WL 5571222, at *1–2. Certainly, Plaintiff's evidence must meet the requirements of the Federal Rules of Evidence in order to be admissible at trial, but the use of statistical sampling does not *per*

*se* violate the Rules.

Nor is the Court persuaded by *Delco Electronics Corp. v. United States*, 909 F.2d 1495 (Fed. Cir. 1990), another case on which First Mortgage relies. *Delco* does not involve the application of Minnesota law, under which a plaintiff is only required to demonstrate a reasonable basis on which to approximate the amount of its damages. (*See* CA, Consol. Summ. J. Order at 166–67) (citing *Poppler v. Wright Hennepin Coop. Elec. Ass'n*, 834 N.W.2d 527, 546 (Minn. Ct. App. 2013), *aff'd sub nom.*, 845 N.W.2d 168 (Minn. 2014)). *Delco* does not dictate that a plaintiff "prove its costs using the best method possible," as First Mortgage asserts. Rather, it requires the best evidence available "under the circumstances." *Delco*, 17 Cl. Ct. 302, 321 (Cl. Ct. 1989). Although the court stated that "actual costs" should be used whenever feasible, estimates of costs were acceptable when actual cost data is unavailable. *Id.*

For all of these reasons, and the reasons identified in the Consolidated Summary Judgment Order, the Court denies Defendant's motion as it relates to loan-by-loan proof of damages and grants Plaintiff's motion regarding the use of statistical sampling.

### 5. Causation (Cross Motions)

The parties have filed several cross motions concerning the legal standard of causation applicable in this case. Plaintiff moves for a ruling that in order to establish causation, it need only establish a causal connection between First Mortgage's breaches and RFC's Settlement liabilities and losses. (Pl.'s Mem. at 15.) In addition, at the hearing on the parties' motions—held after the HLC trial—Plaintiff orally moved for the Court to

find, on the full record before it, that Plaintiff had established causation as a matter of law. (Nov. 18, 2018 Hr'g Tr. at 36 [Doc. No. 175]).

First Mortgage opposes Plaintiff's motion regarding causation, arguing that disputed issues of fact regarding contributory causation precludes summary judgment. (Def.'s Opp'n at 12–16.)  Relying on *Lentell v. Merrill Lynch & Co.*, 396 F 3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005), First Mortgage contends that causation should not be decided on summary judgment. (Def.'s Opp'n at 15.) However, First Mortgage also moves for summary judgment in its favor with respect to certain loans, arguing that Plaintiff cannot meet its burden of proof with respect to causation.  (Def.'s Mem. at 14–15.)

Both parties also seek a ruling concerning whether RFC was the "sole cause" of its losses and liabilities, whether other superseding and intervening causes contributed to the losses and liabilities, and whether RFC waived its right to claim breaches based on certain due diligence that RFC may have performed with respect to certain loans.  (*Id.* at 15, 22–23; Pl.'s Mem. at 23.)  Plaintiff urges the Court to rule consistently with its prior ruling in the HLC trial on this issue, in which the Court found no evidence that RFC was the sole cause of its liabilities and losses, (Pl.'s Mem. at 23), and that superseding and intervening causes are not relevant in an indemnification claim.  First Mortgage seeks a ruling to the contrary as to sole cause, citing allegations of fraud in the underlying claims, and as to intervening and superseding cause, relying on government reports concerning the financial crisis.  (*See* Def.'s Mem. at 15, 22–23.)

Additionally, First Mortgage seeks summary judgment with respect to the following causation-related issues: (1) seven loans in which loan servicers agreed to loan sales; (2) six loans in which the loan servicers agreed to loan modifications; (3) thirteen loans in which the borrowers provided loan servicers an explanation and superseding causes of default; (4) several loans in which the servicers failed to mitigate damages; and (5) two loans in which the servicers under-bid the amount the borrower owed. (*Id.* at 17–31.)

### a. Contributory Cause Standard (Cross Motions)

In the Consolidated Summary Judgment Order, the Court held that language in Client Guide §§ A212 and A202 regarding indemnification for losses and liabilities "resulting from," "arising from," and "as a result of" Events of Default or breaches of the representations and warranties did not require Plaintiff to establish proximate cause for its indemnity claims, but instead required Plaintiff to prove that a defendant's breaches were a contributing cause of RFC's liabilities and losses. (CA, Consol. Summ. J. Order at 97.) The Court finds no basis to depart from this determination and grants Plaintiff's motion on this issue, finding that contributory cause is the applicable causation standard.[10] To the extent that Defendant seeks a different interpretation of this standard, its motion is denied.

In the Consolidated Action, the Court also found on summary judgment, based on the parties' competing expert opinions, that genuine issues of disputed fact remained and denied summary judgment on causation. (*Id.* at 99.)

---

[10] Again, the Court assumes that here, as in the HLC trial, Plaintiff intends to proceed under its indemnification legal theory, for which proximate cause is inapplicable.

During the HLC trial, however, after having received the complete record on the issue of contributing cause, the Court granted Plaintiff's motion for judgment as a matter of law on causation. (CA, HLC Trial Tr. 2987–90.) Among the Court's findings, it noted that in contrast to Plaintiff's expert and fact testimony on causation, HLC failed to present rebuttal evidence, stating, "HLC introduced no evidence to the contrary, fact or expert, on the issue of causation[.]" (*Id.* at 2989.)

The Court denies without prejudice Plaintiff's motion for summary judgment on causation, made during oral argument at the hearing on the instant motions. (*See* Nov. 18, 2018 Hr'g Tr. at 36.) First Mortgage did not have an opportunity to respond to this motion in its written submissions. Plaintiff may renew this argument at trial.

### b. "Substantial Cause"

As to the appropriate standard of causation applicable in this case, the Court rejects First Mortgage's reliance on tort and proximate cause principles, asserted in opposition to Plaintiff's motion.[11] (*See* Def.'s Opp'n at 10.) First Mortgage argues that it did not agree to indemnify RFC for the defense of all claims arising from a breach, "but only those claims

---

[11] First Mortgage relies on *Burrage v. United States*, 571 U.S. 204 (2014), in support of its argument that Plaintiff must prove that First Mortgage's breaches were a "substantial factor" in RFC's losses and liabilities in order to establish causation. (Def.'s Opp'n at 9–10, 12.) First Mortgage also notes that the Court cited *Burrage* in the Consolidated Summary Judgment Order. (*Id.* at 9–10.) Indeed, the Court cited *Burrage*—authority on which the Consolidated Defendants relied—and distinguished it. (CA, Consol. Summ. J. Order at 96.) The Court observed that *Burrage* involved the question of whether a person's death could be said to have "resulted from" the use of heroin, where experts merely testified that the heroin "was a contributing factor" in the decedent's death. (*Id.*) The Court noted that reliance on it was "misplaced in this case of contractual indemnity." (*Id.* at 96.) It remains inapposite to the facts of this case.

arising from § A208 breaches that actually, substantially, and in fact, caused damages."

(*Id.*)  The Client Guide, however, does not confine Plaintiff's indemnification rights to only

those that "substantially . . . caused" damages, nor does First Mortgage identify any such

authority to the contrary.  The language in the Client Guide only requires a causal

connection to establish liability.  (*See* CA, Consol. Summ. J. Order at 93–95.)

As Plaintiff notes, it is not seeking to hold First Mortgage responsible for the entirety

of the bankruptcy Settlements.  (*See* Pl.'s Reply at 8 [Doc. No. 140].)  Rather, Plaintiff

seeks to hold First Mortgage responsible for First Mortgage's allocated portion of the

Settlements.  (*Id.*)  Plaintiff need not show that First Mortgage's breaches were a

"substantial factor" in RFC's losses and liabilities.  To the extent that Defendant seeks

affirmative relief on this basis, it is denied.

### c.  Superseding Cause (Cross Motions)

First Mortgage also argues that a disputed issue of fact exists regarding

"comparative causation" and the allocation of Plaintiff's damages to First Mortgage's

alleged breaches.  (Def.'s Opp'n at 12.)  Plaintiff moves for summary judgment barring

defenses that rely on superseding or intervening cause. (Pl.s' Mem. at 12–13.) Defendant

appears to invoke the concept of comparative negligence or comparative fault from tort

law, which has no bearing in this contractual indemnification action.  *See Leamington Co.*

*v. Nonprofits' Ins. Ass'n*, 661 N.W.2d 674, 677 (Minn. Ct. App. 2003) ("Generally, the

comparative fault statute is not intended to apply to contract claims.")  Like the

Consolidated Defendants, First Mortgage conflates causation with allocation and damages.

(*See* CA, Consol. Summ. J. Order at 97.)

First Mortgage contends that is has "factual information showing that for about 70% of the post-May-14-2006 loans that [it] sold to RFC, the losses . . . were actually attributable sometimes to the borrower and other times the loan-servicers." (Def.'s Opp'n at 14.) Such facts are not relevant to the causation standard here. Plaintiff does not seek indemnification in this action for any losses due to servicing claims. The Bankruptcy Court specifically allocated as between servicing and other claims. (CA, Consol. Summ. J. Order at 19, 171.)

Again, proximate cause is not the standard agreed to by the parties in § A212 of the Client Guide. As the Court explained in the Consolidated Summary Judgment Order,

> The standard agreed to by the parties is whether Defendants' breaches were a contributing cause of RFC's losses and liabilities. In that inquiry, whether other causes—such as macroeconomic factors—were also a contributing cause is irrelevant. In essence, Defendants seek to argue that they should be absolved of their duty to indemnify, despite their breaches, because other factors, including unforeseeable circumstances and market forces over which they have no control, were superseding, intervening causes of the losses and liabilities incurred by RFC. These arguments are barred as a matter of law, because, as Plaintiffs point out, "intervening cause is a proximate cause concept," *Strobel v. Chicago, Rock Island & Pac. R.R. Co.*, 96 N.W.2d 195, 201 (Minn. 1959)—one that has no application in this contractual indemnity claim governed by a "contributing cause" standard. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 836 (1996) (describing the doctrine of "superseding cause" as related to "proximate causation").

(*Id.* at 107.) Accordingly, Defendant's superseding cause defense fails as a matter of law, and Defendant is not entitled to summary judgment regarding certain loans for which it identifies issues concerning short sales, loan modifications, superseding cause of default, non-judicial foreclosure, or the outbidding of loan servicers. Plaintiff's motion for summary judgment seeking to bar First Mortgage from raising a defense based on

superseding cause is granted.

### d. Sole Cause (Cross Motions)

As noted, one of First Mortgage's affirmative defenses is that RFC's actions or omissions may have contributed to Plaintiff's losses and liabilities. Plaintiff moves for a finding on summary judgment that its own actions were not the "sole cause" of its liabilities and losses, (Pl.'s Mem. at 19–23), while First Mortgage moves for summary judgment as to certain loans for which it contends RFC was the sole cause of the losses and liabilities. (Def.'s Mem. at 15.) First Mortgage argues that the sole-cause defense remains viable because, in the Consolidated Summary Judgment Order, the Court found that it remained a disputed issue of fact. (Def.'s Opp'n at 17, 22.)

In the Consolidated Action, the Consolidated Defendants offered a hypothetical opinion from expert Steven Schwarcz regarding circumstances in which RFC could have breached representations and warranties to the RMBS Trusts and Monolines that did not overlap with the Consolidated Defendants' breaches of representations and warranties to RFC. (CA, Consol. Summ. J. Order at 108–09.) The Court deferred ruling on the admissibility of Schwarcz's opinion, subject to the development of the factual record and the Court's determination of whether there was evidence in the record to support Schwarcz's argument. (*Id.* at 109.) Ultimately, because HLC failed to develop the facts that would support Schwarcz's opinion, the Court precluded his testimony. (CA, Oct. 22, 2018 Order at 15 [Doc. No. 4641].)

Here, First Mortgage offers no fact evidence nor expert evidence in support of its

sole-cause defense, nor has it identified any representations and warranties that RFC allegedly breached that do not overlap with First Mortgage's breaches.  In its affirmative brief for summary judgment, Defendant asserts that the Court cited an example of the sole cause defense in the Consolidated Summary Judgment Order, where the loss was caused by a borrower losing his job.  (Def.'s Mem. at 15) (citing CA, Consol. Summ. J. Order at 108–09.)   The example in question was a hypothetical identified by HLC's excluded expert, Schwarcz, involving a borrower who was employed at the time the originating bank sold the loan to RFC, but lost his job after the effective date of the originating bank's representations and warranties.  (CA, Consol. Summ. J. Order at 108.)  First Mortgage points to no evidence to this effect in the record and Plaintiff's due diligence is irrelevant to the contributory cause analysis. Defendant's arguments regarding non-judicial foreclosure and loss causation are similarly irrelevant.

First Mortgage also contends that RFC cannot meet the causal standard set forth in *Basis PAC-Rim Opportunity Fund (Master) v. TCW Asset Mgt. Co.*, 48 N.Y.S. 3d 654 (N.Y. App. Div. 2017), *Lentell*, 396 F.3d at 172, and *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  (Def.'s Mem. at 16.)  These cases, however, involved proximate cause standards and fraud claims that are inapplicable here.  Plaintiff seeks indemnification for the losses and liabilities arising from the Settlements.  This does not require Plaintiff to show that any of First Mortgage's breaches were the sole cause of Plaintiff's liabilities and losses, or even that First Mortgage's breaches caused a risk of default.  (*See* CA, Consol. Summ. J. Order at 95.)

28

First Mortgage also argues that the only reason that RFC settled any of the pre-May 14, 2006 loans was due to allegations of fraud in the underlying bankruptcy claims and a different statute of limitations applicable to fraud claims versus contract claims. (Def.'s Opp'n at 14–15.) Similarly, Plaintiff also seeks a ruling from the Court, finding that RFC's alleged wrongdoing, whether through negligence or fraud, does not bar First Mortgage's liability. (Pl.'s Mem. at 23.)

The Court granted summary judgment to Plaintiff in the Consolidated Action on the effect of the "RFC-misconduct" allegations on the Settlements, finding that RFC could be indemnified for unproven allegations of misconduct, including negligence and fraud. (CA, Consol. Summ. J. Order at 31–42.) First Mortgage's speculation about the value of the fraud claims, without any supporting evidence, fails to create a disputed issue of fact as to causation. Accordingly, the Court grants Plaintiff's motion with respect to the sole-cause defense and denies First Mortgage's motion on this basis.

### 6. Effect of RFC's Bankruptcy Filing (Plaintiff's Motion)

Plaintiff moves for summary judgment on the question of whether First Mortgage's liability was extinguished by RFC's bankruptcy. As the Court observed in the Consolidated Summary Judgment Order, (*see id.* at 51–52), although the estate of a debtor normally ceases to exist once a Chapter 11 plan is confirmed, courts have recognized that termination of a bankruptcy estate "'is expressly subject to the terms and provisions of the confirmed plan, and that the confirmed plan need not state in explicit terms that the bankruptcy estate is to continue in existence.'" *United States v. Unger*, 949 F.2d 231, 233

(8th Cir. 1991) (quoting *In re Canton Jubilee, Inc.*, 253 B.R. 770, 776 (Bankr. E.D. Tex. 2000) (internal citations omitted); *also citing Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993) ("The reversion of property from the estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan."); *In re Ernst*, 45 B.R. 700, 702 (Bankr. D. Minn. 1985) ("All estate property is vested in the debtor at confirmation, except as the plan specifically provides otherwise. Accordingly, in the absence of a plan provision retaining property in an estate, the estate ceases to exist."))." )

In the Consolidated Summary Judgment Order, the Court examined the language of the Bankruptcy Court's Confirmation Order, finding that RFC's bankruptcy discharged RFC's obligation to pay a debt, but did not extinguish the debt itself. (CA, Consol. Summ. J. Order at 54–56.) Even earlier in the non-consolidated proceedings, the Court found that "the plan expressly preserved these claims and transferred the claims to the Trust to prosecute." *ResCap Liquidating Trust v. U.S. Bank, N.A.*, Nos. 16-cv-4067 (PAM/HB), 17-cv-197 (PAM/HB), 17-cv-198 (PAM/HB), 2017 WL 2437242, at *3 (D. Minn. June 5, 2017). Were it otherwise, First Mortgage would receive a windfall if it were allowed to eschew liability due to RFC's insolvency.

First Mortgage considers this motion similar to Plaintiff's motion seeking to recover both its liabilities and its losses. (Def.'s Opp'n at 26.) It contends that "while there were Allowed Claims, such claims were discharged by RFC's Bankruptcy settlement in exchange for that settlement, and that RFC may only recover as its § A212 indemnification

30

right to losses and liabilities the actual amount for which it settled each individual loan."
(*Id.*) For the reasons noted in the Court's discussion of Plaintiff's motion to recover both
its liabilities and its losses, the Court rejects Defendant's argument. Plaintiff may seek
indemnification for all incurred liabilities that were allowed by the Bankruptcy Court.

The Court finds no disputed issue of fact with respect to the effect of RFC's
bankruptcy on First Mortgage's liability and grants Plaintiff summary judgment in this
regard.

### 7. Material Breaches (Defendant's Motion)

First Mortgage further argues that a disputed issue of fact exists regarding whether
its breaches were "material" to RFC's losses and liabilities. (Def.'s Opp'n at 18–20)
(citing, e.g., *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*,
2017 U.S. Dist. LEXIS 35348, at *126 (S.D.N.Y. Mar. 10, 2017) (noting that courts
distinguish between "minor and major breaches")). As Plaintiff notes, however, there is
no such disputed fact because it only seeks damages on loans for which its reunderwriting
expert, Mr. Hunter, found at least one material breach. (Pl.'s Reply at 9.) While Plaintiff
is simply required to show that First Mortgage's breaches increased RFC's risk of loss to
the RMBS Trusts and Monoline, Plaintiff's analysis accounts for materiality, and is part of
the exercise of RFC's sole discretion to determine breaches. (*See* CA, Consol. Summ. J.
Order at 169.) First Mortgage points to no evidence that rebuts Mr. Hunter's opinions that:
(1) First Mortgage's material breaches increased the risk of loss on a loan; and (2) First
Mortgage's breaches were or could be considered breaches of RFC's representations and

warranties to the RMBS Trusts or Monolines.

Defendant specifically moves for summary judgment with respect to a group of 35 loans, arguing that Plaintiff is claiming damages without any allegations of material breach supported by Mr. Hunter.[12]  (Def.'s Mem. at 13.)  Again, Plaintiff is not seeking indemnity with respect to these loans.  (Pl.'s Opp'n at 6 n.4.)  Accordingly, as to the loans without any allegation of material breach, identified in the footnote below, Defendant's motion is denied as moot.  Plaintiff is seeking damages, however, for the 88 First Mortgage loans for which Mr. Hunter found at least one material breach, which remain in the case.  (*Id.* at 6) (citing Scheck Decl., Ex. 31 (Corrected Snow Rpt. at 2); *id.*, Ex. 5 (Hunter Rpt. at 3).

In sum, with the exception of the loans without any allegation of material breach, discussed directly above, all of Defendant's causation-related bases for summary judgment are denied.

### 8.  Additional Affirmative Defenses

Plaintiff also seeks summary judgment on First Mortgage's defenses of waiver and estoppel.  First Mortgage moves for summary judgment on its statute of limitations defense.[13]

---

[12] Plaintiff states that First Mortgage identifies only 32 loans, not 35 loans.  (Pl.'s Opp'n at 6 n.4.)  Defendant identifies the following 32 loan numbers:  72, 74, 77, 78, 79, 80, 81, 86, 87, 90, 91, 94, 95, 97, 99, 100, 103, 108, 110, 111, 114, 119, 122, 124, 125, 126, 134, 135, 141, 142, 143, & 146.  (Def.'s Mem. at 13, n. 15) (citing Sullivan Decl., Ex. B-1 (Hunter Expert Report, Ex. 2A) [Doc. No. 92].)

[13] The Court has addressed other defenses, *supra*, including whether RFC's bankruptcy extinguished the At-Issue liability, whether RFC's alleged wrongdoing bars First Mortgage's liability, and accord and satisfaction.

### a. Waiver and Estoppel (Plaintiff's Motion)

First Mortgage asserts the affirmative defenses of waiver and estoppel. (Ans. to First Am. Compl. ¶ 94.) Section A200 of the Client Guide required First Mortgage to acknowledge that RFC purchased the loans in reliance on First Mortgage's representations and warranties, and First Mortgage agreed to assume liability for any misrepresentations for breaches, regardless of its knowledge or RFC's knowledge. (Horst Decl., Ex. 1 (Client Guide § A200).) Moreover, it explicitly provided that there could be no waiver of the provisions of the Client Guide unless RFC expressly made such a waiver in writing:

> The representations and warranties pertaining to each Loan purchased by []RFC survive the Funding Date, any simultaneous or post-purchase sale of servicing with respect to the Loan and any termination of the Client Contract, and are not affected by any investigation or review made by, or on behalf of, []RFC *except when expressly waived in writing by []RFC.*

(*Id.*) (emphasis added).

Similarly, Client Guide § A209(B) provided that "[RFC] may waive any default . . . *only by a written waiver specifying the nature and terms of such waiver.*" (*Id.,* § A209(B)) (emphasis added). In addition, a client's representations and warranties survived "any due diligence or failure to conduct due diligence," (*id.*, § 205(C)), and Clients that utilized RFC's Assetwise loan evaluation tool were still bound by the representations and warranties of the Client Guide. (*Id.,* § G401(B).)

Under Minnesota law, "[w]aiver is the intentional relinquishment of a known right." *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn. 2011). The burden of proving waiver rests on the party asserting waiver. *Id.* To show a valid waiver, that party must prove

two elements: "(1) knowledge of the right, and (2) an intent to waive the right." *Id.* "Waiver may be express or implied—'knowledge may be actual or constructive and the intent to waive may be inferred from conduct.'" *Id.* (quoting *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 367 (Minn. 2009)). However, "[a]lthough waiver can be express or implied, both types of waiver require an expression of intent to relinquish the right at issue." *Id.* Accordingly, mere inaction is insufficient to establish waiver. *Id.*

First Mortgage relies on *Residential Funding Co., LLC v. Terrace Mortgage Co.*, 725 F.3d 918 (8th Cir. 2013), for the proposition that the question of "whether there has been a waiver of breach is a dispute of fact which cannot and should not be resolved by summary judgment." (Def.'s Opp'n at 3.) In *Terrace*, the court observed that "Minnesota courts will not find waiver absent a clear intention to do so, or facts from which waiver is necessarily implied." 725 F.3d at 918. Based on the very same language in the Client Guide regarding waiver, the Eighth Circuit in *Terrace* rejected Terrace Mortgage's argument that RFC had waived its right to demand repurchase through its course of conduct. *Id.*

First Mortgage points to examples of RFC pre-purchase reviews, (CA, Sullivan Decl. [Doc. No. 3764], Ex. B (RFC Pre-Purchase Reviews at 1, 3, 4)), a due diligence review with respect to a particular loan, (Sullivan Decl. [Doc. No. 132], Ex. G (Due Diligence Worksheet)), and loan approval of a particular loan, (*id.*, Ex. K (Loan Documents at 9)), arguing that this evidence creates a disputed issue of fact regarding waiver. (Def.'s Opp'n at 5–6.) It also points to an alleged fact dispute concerning "whether the damages

claimed were caused by the alleged [First] Mortgage R&W breaches or RFC's contract origination waiver of the same alleged R&W breaches." (Def.'s Opp'n at 11, *see also id.* at 13.)

First Mortgage's waiver defense fails. It concedes that the At-Issue Loans were subject to the Client Guide, and points to no evidence of a written waiver, which the Guide requires. (*See* Horst Decl., Ex. 1 (Client Guide § A209(B)) ("[RFC] may waive any default . . . only by a written waiver specifying the nature and terms of such waiver."). Moreover, the plain language of § A200 provides that the representations and warranties survive despite any investigation by RFC and whether RFC had actual or imputed knowledge of a breach, and § 205(C) provides that First Mortgage's representations and warranties survive any due diligence efforts.

Furthermore, just as the Eighth Circuit noted in *Terrace*, here, RFC had no reason to waive "a highly advantageous contractual provision," nor was its conduct inconsistent with the terms of the Client Guide. *See* 725 F.3d at 918–19. As the Eighth Circuit found in *Terrace*, "[RFC's] history of working out an informal resolution to breach of warranty issues [was] therefore not *contrary* to the terms of the contract; it [was] merely declining the option to pursue a remedy for which the contract allows." *Id.* (emphasis in original).

The Court finds no disputed issue of fact with respect to waiver. Accordingly, First Mortgage may not assert a waiver defense and Plaintiff's motion is granted in this respect.

Turning to First Mortgage's estoppel defense, as the Court has stated, estoppel requires

> non-hearsay competent evidence that, despite the fact that [First Mortgage] signed the client contract incorporating the Client Guide, that there were communications between a person capable of [waiving the Guide's requirements] at RFC and a person capable of doing that at [First Mortgage] in which [First Mortgage] was advised that they could deviate in part or entirely from the Client Guide and [First Mortgage] reasonably relied on that.

(Scheck Decl., Ex. 32 (CA, Sept. 14, 2018 Pretrial Hr'g Tr. at 11).) Here, there is no such evidence. To the contrary, First Mortgage acknowledges that the Client Guide applies to all of its loans. (Def.'s Mem. at 4.) Because no genuine issue of material fact is in dispute regarding estoppel, Plaintiff's motion is also granted in this regard. To the extent that Defendant seeks summary judgment on this basis, is it denied.

### b. Statute of Limitations (Defendant's Motion)

First Mortgage argues that Plaintiff's indemnification claim is time-barred with respect to loans that RFC purchased before May 14, 2006. (Def.'s Mem. at 8.)

Early in the Consolidated Action, this Court rejected this argument, and noted that "every other judge in the District to have considered it [prior to consolidation of the individual cases]" had also rejected it. (CA, Consol. Summ. J. Order at 146) (collecting cases). On summary judgment, the Court ruled consistently with the earlier rulings, rejecting the statute of limitations defense on Plaintiff's indemnification claims. (*Id.*)

Minnesota has a six-year statute of limitations for breach of contract and indemnification claims. *See* Minn. Stat. § 541.05, subd. 1(1). Under Minnesota law, a statute of limitations begins to run when "the cause of action accrues." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011) (citations omitted). A cause of action is deemed to have accrued "when all of the elements of the action have occurred, such that the

cause of action could be brought and would survive a motion to dismiss for failure to state a claim." *Id.* (citing *Dalton v. Dow Chem. Co.,* 158 N.W.2d 580, 584 (Minn. 1968)). A breach of contract claim accrues at the time of the alleged breach, regardless of whether the plaintiff was aware of the breach.[14] *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989). However, claims for common law indemnification accrue when "the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment or more than a commensurate share of it." *Metro. Prop. & Cas. Ins. Co. v. Metro Transit Comm'n*, 538 N.W.2d 692, 695 (Minn. 1995) (citation omitted).

Under § 108(a) of the Bankruptcy Code, if the statute of limitations governing a debtor's claim has not expired prior to the filing of the bankruptcy petition, the trustee may commence an action on that claim before the later of the end of the statutory limitations period or "two years after the order for relief." 11 U.S.C. § 108(a). RFC's May 14, 2012 voluntary bankruptcy filing constituted "the order for relief" and extended the limitations period for all claims that were still timely as of that date. 11 U.S.C. § 301(b). In the Consolidated Summary Judgment Order, the Court found that because "the statute of limitations for loans sold to RFC before May 14, 2006 accrued as of December 2013, . . . [Plaintiff's] indemnification claims for these loans are therefore timely." (CA, Consol. Summ. J. Order at 148.)

---

[14]In the Consolidated Action, the Court found that Plaintiff's breach of contract claims for failure to notify as to loans sold prior to May 14, 2006 were time-barred. (CA, Consol. Summ. J. Order at 145.)

First Mortgage contends that RFC does not assert a stand-alone indemnification claim, but rather, it asserts a breach of contract claim disguised as an indemnification claim. (Def.'s Mem. at 5–12.) First Mortgage relies on *Lehman Brothers Holdings v. Universal American Mortgage Co., LLC*, 660 F. App'x 554 (10th Cir. 2016), in support of its position that the claims accrued at the time of the sale of the loans because Plaintiff's claim sounds in contract. The Court distinguished this authority in the Consolidated Summary Judgment Order, however. (CA, Consol. Summ. J. Order at 146–47.) In *Lehman Brothers*, the plaintiff presented its claim as one for breach of contract, alleging harm based on breaches of various representations and warranties and the defendant's refusal to repurchase the loans in question. 660 Fed. App'x. at 567. The complaint did not include a claim for indemnification, nor any allegations regarding third parties Freddie Mac and Fannie Mae, nor any allegations regarding payments by Lehman Holdings to a third party. *Id.* The Tenth Circuit found that the statute of limitations accrued on the date of the breaches, citing the plaintiff's failure to allege a stand-alone indemnity claim. *Id.* at 567–68. In finding the claim untimely, the court also relied on New York precedent involving the implied right of indemnity, which requires allegations that the defendant owes a duty of care to a third party rather than to the plaintiff itself. *Id.* at 568 (citing *City of New York v. Lead Indus. Ass'n, Inc.,* 644 N.Y.S.2d 919, 923 (N.Y. App. Div. 1996); *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986)).

Here, however, Plaintiff expressly asserts a stand-alone cause of action for *contractual* indemnity. Unlike *Lehman Brothers*, the pleadings here reference Plaintiff's

liabilities to third parties, (*see* First Am. Compl. ¶¶ 36-74), and the payments made by Plaintiff pursuant to the Settlements. (*Id.* ¶¶ 75–76). Moreover, more recently in a *Lehman Brothers* bankruptcy proceeding, the bankruptcy court overseeing the claims asserted against the correspondent lenders drew the same distinctions:

> The Indemnification Claims asserted by [Lehman Brothers] in the Complaints are contractual indemnification claims under section 711 of the Seller's Guide that did not accrue until [Lehman Brothers's] liability to the GSEs was fixed upon the approval of the GSE Settlements in 2014. Causes of action for express contractual indemnification have not been actually litigated and necessarily adjudicated in the prior proceedings pointed to by the Defendants – the Colorado Actions and *Universal American*.

*In re Lehman Bros. Holdings Inc.*, No. 08-13555(SCC), 2018 WL 5794436 (Bankr. S.D.N.Y. Oct. 31, 2018).

Under § A202(II), First Mortgage agreed to indemnify RFC from "any claim, demand, defense or assertion against or involving []RFC based on or grounded upon, or resulting from such misstatement or omission [by Defendants] or a breach of any representation, warranty or obligation made by []RFC in reliance upon such misstatement or omission." (Horst Decl., Ex. 1 (Client Guide § A202(II).) And § A212 provided RFC with wide-ranging indemnification rights in the event of an originating lender's default. The indemnification provision requires the originating lender to indemnify RFC from

> all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other coasts, fees, and expenses resulting from any Event of Default. This includes, without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Contract, (iii) any claim, demand, defense or assertion against or involving []RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by []RFC in reliance upon any warranty, obligation or

representation made by the Client contained in the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the Client in information required under Regulation AB or any successor regulation.

(*Id.* § A212.)

Versions of the Client Guide from July 1, 2002 forward contain additional language regarding the loan originators' broad indemnification obligations to RFC:

In addition, Client shall indemnify []RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by []RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by Client, or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan. With regard to legal fees or other expenses incurred by or on behalf of []RFC in connection with any such litigation or governmental proceeding, Client shall reimburse []RFC for such fees and expenses. . . . Except for notices for reimbursement, []RFC is not required to give Client notice of any litigation or governmental proceeding that may trigger indemnification obligations. Client shall instruct its officers, directors and agents (including legal counsel) to cooperate with []RFC in connection with the defense of any litigation or governmental proceeding involving a Loan. []RFC has the right to control any litigation or governmental proceeding related to a Loan, including but not limited to choosing defense counsel and making settlement decisions.

(*Id.*)

RFC's indemnification claim against First Mortgage in the First Amended Complaint tracks this language, alleging that RFC "has incurred substantial liabilities, losses and damages arising from and relating to material defects in the mortgage loans First Mortgage sold to RFC, including over $10 billion in allowed claims approved by the [Bankruptcy Court] . . . ," and that First Mortgage "expressly agreed to indemnify RFC for the liabilities, losses and damages, including attorneys' fees and costs, which RFC has

incurred." (First Am. Compl. ¶¶ 87–88.) Simply because the Client Guide's indemnity provisions could be triggered by breaches of contractual or common law duties does not transform Plaintiff's indemnity claim into a breach of contract claim. As Plaintiff notes, indemnification provisions often cover an indemnitee's losses and liabilities caused by the indemnitor's negligence. However, such provisions do not convert an indemnification claim into a negligence claim.

For all of the forgoing reasons, Defendant's summary judgment motion is denied with respect to its statute of limitations defense.

### 9. "Data Dump" Allegations

As noted, First Mortgage alleges that Plaintiff inundated it with discovery, making it difficult to defend against the claims in this lawsuit. (Def.'s Opp'n at 28–32.)

This lawsuit was filed in 2013. From January 2015 until June 2018, First Mortgage was a Consolidated Defendant in the Consolidated Action. During this period of over three years, the Court held monthly status conferences, attended by First Mortgage's counsel. In large part, these status conferences concerned pretrial discovery issues. Like all of the Consolidated Defendants, First Mortgage was free to raise concerns about discovery and, if warranted, move for relief. It failed to do so regarding this alleged "data dump." In fact, it acknowledges that it *intentionally* failed to raise the issue until now. (*Id.* at 32) ("We have knowingly and intentionally not raised this issue previously."). Any deficiency that First Mortgage faces in mounting a defense is therefore of its own making. No other Defendant has alleged that a "document dump" hindered its ability to defend against

Plaintiff's claims. To the extent that First Mortgage seeks some form of relief or even summary judgment based on a purported "document dump," it is denied.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.  Plaintiff's Motion for Partial Summary Judgment [Doc. No. 110] is **GRANTED in part, DENIED WITHOUT PREJUDICE in part, and DENIED in part**; and

2.  Defendant's Motion for Partial Summary Judgment [Doc. No. 85] is **DENIED AS MOOT in part and DENIED in part**.

Dated:  December 21, 2018                    s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge